HON. JONATHAN ROSS,     ⎫
HON. H. HENRY POWERS,   ⎬ ASSISTANT JUDGES.
HON. RUSSELL S. TAFT,     ⎭

---

## HAZEN CAMPBELL v. DANIEL TARBELL AND OTHERS.

### *Injunction.  Damages.*

The plaintiff had recovered judgment against the defendant ; execution had been issued, which expired August 12th, 1876, and was returned to the court on that day.  On the 9th day of August, 1876, the defendant brought a bill in chancery : "To enjoin and strictly forbid the said Hazen Campbell . . . his agents, &c., from proceeding further in the collection *of the said execution*," &c.  The injunction was : "The said Campbell, &c., . . . are strictly enjoined and prohibited from proceeding further in the collection of *the said execution*," &c. The injunction was made conditional upon the filing of a bond by the defendant.  The bond was filed August 12th ; the injunction was served on the present plaintiff August 24th, and on the sheriff, who held the execution, September 13th, all of the same year.  It did not appear that the plaintiff or sheriff knew of the injunction until it was served.  No alias execution was taken out. In an action on the bond, *Held*,

1. That the injunction enjoined the *enforcement of the judgment*, not the execution that had already run out.

2. In deciding whether there has been a breach of an injunction, it was important to observe the objects for which the relief was granted.

3. The plaintiff was entitled to recover to $215,—the value of wood and lumber, which he was, clearly, prevented from selling by the injunction ; but not for wood so situated that it could not have been discovered by reasonable diligence, or without *great energy*, or, where an officer would not be negligent if he failed to seize it on execution.

DEBT on injunction bond. Heard on the report of a referee, December Term, 1881, POWERS, J., presiding. Judgment for the plaintiff to recover $531.70. The referee found that it did not appear that the plaintiff, or sheriff who held the execution, knew of the injunction until it was served ; that the prayer of the bill was :

" To enjoin and strictly forbid the said Hazen Campbell and the said Luke Parish, and their confederates, agents and attorneys, from proceeding further in the collection of said *execution*, issued upon the judgment, etc ;"

that the injunction was :

" The said Campbell and Parish, their agents and attorneys are strictly enjoined and prohibited from proceeding further in the collection of the said *execution*, in favor of the said Campbell against said Tarbell," etc. ;

that the condition in the bond was :

" Whereas the chancellor  .  .  .  .  has on application of said Daniel Tarbell said Campbell enjoined and restrained said Campbell  .  .  .  .  from prosecution and further collection of an *execution*, &c. "

The referee reported, in part :

There were also a few scattering logs that I find were included in the levy that plaintiff was prevented from selling by the injunction, which belonged to Tarbell, and I find the value to be fifteen dollars, which is a proper item for damage in this suit.

In regard to the sawed lumber remaining after the sale of the 15,000 feet to plaintiff.  It was claimed by the defendant, Tarbell, that he did not own the same or all of it.  He gave evidence to show that he had the winter before sold a large amount of lumber to his son, Luke Tarbell, and that the most of the lumber in the vicinity of the mill and mill-yard, at the time of the levy was this lumber ;  but as the said Luke Tarbell had never removed or taken possession of this lumber, I find that it belonged to the defendant, Tarbell, and was liable to the said levy. It was in evidence, that there was other lumber, including a barn frame, and other kinds that belonged to said Tarbell ;  and I find that the said Tarbell had twenty-five thousand feet of lumber, that was levied upon (after all deductions), that the injunction prevented the sale of ;  worth

two hundred dollars, and interest added, makes $251, which the plaintiff is entitled to have considered in estimating his damages in this suit.

The plaintiff also claims, and proof was offered to show, that in the following winter and spring a large amount of wood was sawed by J. M. Smith and A. P. Smith, which belonged to said Tarbell, that he, plaintiff, might have seized, had he not been enjoined. This wood was manufactured after the levy, and of course was not included in it; but the plaintiff claims he might have had a chance to have seized it, if he had not been enjoined.

I find in regard to this that the said Smiths and one Bickford were sawing wood for defendant, Tarbell, at or near the railroad station at East Granville, and at one time there was of this wood lying in the sheds and the yard, some one hundred and fifty to two hundred cords, worth about three dollars per cord. The teams were drawing the wood in the logs and in four-foot wood from the mountain about as fast as the sawyers sawed it, and it was being taken away along as needed by the railroad company, so it became hard to tell what particular quantity there was there in Tarbell's possession at any particular time. Tarbell claimed that all this wood was in possession of the railroad company from the time it arrived on the ground, when it was sawed; and to establish this offered in evidence a certified copy of a lease from himself to the railroad company of the ground on which this wood was sawed, and on which most of it was after it was sawed, until removed by the railroad company. The copy of the lease was admitted, and after describing the land leased, which embraced the land on which the wood lay, had the following condition or reservation, viz.: "reserving, however, to myself all privileges of said yard for wood, and the piling of logs and wood, not necessary for said railroad to use for piling wood and logs bought of said Tarbell, or such other person as said Tarbell may direct; and it is agreed that such person shall not be on any part thereof, subject to any other person without said Tarbell's consent."

It did not appear what said Tarbell's contract with the railroad company was, in regard to this wood, nor did it appear that any of said wood had been measured and accepted by the railroad company at any time while the injunction was pending.

I find from the above facts that the said Tarbell was in possession of the wood, and the owner thereof, and that there were times during the pending of said injunction, when Campbell might have secured something on wood at this point, as it was passing through the mill, provided he discovered such chance. In other words, had it not been for the injunction, he might have caught something "on the wing," but to say what this chance was worth to him, and how much he lost by it, is quite difficult. He might by great energy have seized some wood at some time, and he might not. The proof did not show that he at any time became informed of any chance so to do. In actions of this kind, I take the rule to be for the triers, not to audit the value of specific pieces of property the plaintiff might have seized upon during the pendency of the injunction, but to say, taking all the circumstances into consideration, how much the plaintiff was damaged by it; what were his probable chances worth on this property. Adopting this rule (and not from finding at any particular time wood there that the plaintiff had knowledge of, and would have levied on but for the injunction), I find that the plaintiff was damaged two hundred dollars, or in other words, I find that he might have secured that amount on that wood, in the process

of manufacture, had he not been enjoined from so doing, but refer the whole question of law to the court. If the above item of $200 is to be allowed, interest should be added, making the whole sum $251."

The other facts are stated in the opinion.

*Perrin & McWain*, for the defendants.

The damages must be the natural and proximate consequence of the injunction; and the liability is to be determined by the words of the injunction and bond, and will not be construed to extend beyond the terms and conditions thereof. Sedgw. Dam. 489, n. A surety is not to be held beyond the precise terms of the contract. *Bank* v. *Root*, 2 Met. 566; *Boston H. & M. Co.* v. *Messinger*, 2 Pick. 235; *Wright* v. *Russell*, 3 Wilson, 535; *Meyers* v. *Edge*, 7 Term, 254; *Strange* v. *Lee*, 3 East, 490; *Miller* v. *Stewart*, 9 Wheat. 680; Kerr Inj. 70; *State Treasurer* v. *Mann*, 34 Vt. 376; 1 New Rep. 41; 11 N. Y. 598; 38 Eng. L. & Eq. 57; 62 Barb. 354.

In an action on a bond, given on obtaining an injunction restraining the plaintiff's action at law on a promissory note, interest on the note, during the pendency of the injunction was held recoverable only. *Derry Bank* v. *Heath*, 45 N. H. 524; Sedgw. Dam. 489; Ib. 693. The damages found are too remote. *Center* v. *Hoag*, 52 Vt. 401; 10 Cush. 177; 9 Cush. 318; 48 Vt. 619; 10 Iowa, 337; 34 Iowa, 116; 51 Ill. 328; 31 Barb. 158; 21 N. Y. 99.

*N. L. Boyden* and *C. W. Clark*, for the plaintiff.

The injunction was against the *judgment*, and not merely the execution. Kerr Inj. 693; *Howe* v. *Willard*, 40 Vt. 654; *Stimson* v. *Putnam*, 41 Vt. 238.

A party enjoined from doing any act is not allowed to practice any subterfuge to escape obedience, but is required to act in perfect good faith with the court, and with the opposite party. 1 L. R. Eq. C. 42.

So that by this injunction, until it was dissolved, these plaintiffs were prevented from making use of any process of the court to collect the money on the judgment. *Bullen* v. *Ovey*, 16 Ves. 144;

*Merrick* v. *Bailey*, 2 Sim. & St. 577 ; High Inj. s. 1444 ; *Mead* v. *Norris*, 21 Wis. 310.   Damages correctly assessed.   10 Rich. (s. c.) 160.

The opinion of the court was delivered by

ROYCE, Ch. J.   The allegations in the bill brought by the defendant Tarbell against the plaintiff upon which he predicated his claim for relief were, that the plaintiff had obtained a fraudulent judgment against him, and that he had offsets against that judgment which he had been fraudulently prevented from making.   The plaintiff had taken out an execution upon said judgment which was, on the 9th day of August, 1876, in the hands of Luke Parish, a deputy sheriff, for collection.   The prayer of the bill, as far as relates to an injunction, was that the court should enjoin and strictly forbid the defendants and their confederates, agents and attorneys from proceeding further in the collection of the execution issued upon said judgment.

The chancellor to whom said bill was directed on said 9th day of August granted an injunction enjoining and forbidding the defendants, their confederates, agents and attorneys from proceeding further in the collection of said execution.   Said injunction was made conditional upon the filing of a bond by the defendant Tarbell according to the rules in chancery ; and the bond in suit was filed with the clerk of the Court of Chancery, to which the bill was made returnable, on the 12th day of August, 1876.   The condition of the bond, after stating that the injunction was granted upon the application of Tarbell and reciting it, provides that if the said Tarbell shall well and truly pay all intervening damages occasioned by delay to said Campbell in case it shall prove that said injunction is improperly granted, then this obligation to be null and void, but otherwise in full force.   The injunction was served on the said Parish on the 24th of August, 1876, and on the plaintiff on the 13th of September, 1876 ;   and was in force from the time of its service until the December Term of the Orange County Court, 1877.   The execution mentioned in said injunction was dated the 13th of June, 1876, and made returnable in sixty days ; and on the 12th day of August, 1876, (the last day of its life),

it was returned to the clerk of the court from which it issued with the officer's return thereon. While the execution was in Parish's hands, he had levied the same upon Tarbell's property and had sold a portion of it, and some which was covered by the levy had not been sold when the execution was returned. The plaintiff did not take out an alias execution or institute any other proceeding to enforce the collection of said jugdment pending said injunction, and seeks to recover in this action the loss sustained by him in consequence of its having been granted.

The right of the plaintiff to recover is resisted upon the claim that the obligation of the defendants, evidenced by the injunction and bond, does not cover the damages or losses which it is found the plaintiff sustained ; so that the first question to be determined is the construction to be put upon these instruments.

The purpose of the bill upon which the injunction was granted was to avoid the judgment upon which the execution issued ; and unless the injunction is construed as enjoining the enforcement of that judgment during its pendency, the obtaining of it was an idle and useless ceremony. The orator did not need to have the collection of the execution which had been issued enjoined, because it had run out when the injunction was served, and no beneficial purpose was served by the giving of the bond in suit.

It is evident to us that it was understood by the chancellor, the party who applied for the injunction, and the defendants who joined with him in the execution of the bond, that the injunction was operative to prevent the institution of any proceedings to enforce the judgment. This was the intention of the parties to the transaction ; and it was said by Lord MANSFIELD in remarking upon the obligations of sureties in *Barclay* v. *Lucas*, 1 T. R. 291, that in questions upon intentions we must look at the subject-matter of the contract. The violation of the spirit of an injunction, even though its strict letter may not have been disregarded, is a breach of the mandate of the court. *Grand Junction, &c.* v. *Dimes*, 17 Sim. 38. In the case of *Partington et al.* v. *Booth et al.*, 3 Merivale, 148, it was held that where the defendant had been enjoined from taking possession under a verdict obtained by him in an action of ejectment, and the costs had been taxed, and a

writ of possession executed before the issuing of the injunction, it was a breach of the injunction to procure an attachment for the non-payment of the costs. In deciding whether there has been a breach of an injunction it is important to observe the objects for which the relief was granted, as well as the circumstances attending it. *Loher* v. *Arnold*, 15 Jur. 117.

Considering those objects and circumstances, any attempt to collect the judgment while the injunction was in force would have been a breach of it, and subjected the party making it to punishment for contempt A party will not be permitted to do indirectly what he has been prohibited from doing directly. The injunction being operative to that extent, the bond given by the defendants was a vaild and binding obligation to secure the plaintiff against loss that he might sustain in consequence of its being granted.

The remaining question is whether, upon the findings of the referee, the plaintiff has sustained loss which is recoverable in this action. It is found that the plaintiff was prevented from selling the wood, which the referee has found was worth $15, and the lumber, which was worth $200, by the injunction, and there can be no question but what those items should be allowed. The facts found in relation to the last item of $200 do not, in our judgment, furnish a basis upon which it can be held as a matter of law that the damages represented by that item are compensatory. The burden of proof was upon the plaintiff to show that Tarbell not only had the wood, but that it was so situated that by the use of reasonable diligence it might have been discovered, so that an officer holding an execution might have levied upon it. No such facts were shown; but on the contrary it is found that it would have required *great energy* to seize any of it. The facts found would probably have excused an officer holding an execution for neglect to make a levy. The damages thus shown are too remote and conjectural to constitute a cause of action.

The judgment of the County Court is reversed, and judgment rendered for the plaintiff to recover the two first items, as found by the referee, and interest.